IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FREEDOM CHILD,

        Plaintiff,

v.

CITY OF PORTLAND, OFFICER JEFFREY DORN, and OFFICER JASON HARRIS,

        Defendants.

_____

CV. 05-1211-AS

FINDINGS AND RECOMMENDATION

ASHMANSKAS, Magistrate Judge:

        Defendants, the City of Portland ("Defendant City"), Officer Jeffrey Dorn ("Defendant Dorn"), and Officer Jason Harris ("Defendant Harris") (collectively "Defendant Officers"), move for partial summary judgment on Plaintiff Freedom Child's ("Plaintiff") claims. Defendants move

Findings and Recommendation          1          {KPR}

for summary judgment on Plaintiff's federal claims arising under 42 U.S.C. § 1983: illegal seizure, unlawful arrest, and malicious prosecution.  Defendants' also move for summary judgment against Plaintiff's state law claims: malicious prosecution, intentional infliction of emotional distress ("IIED"), and her request for punitive damages.  Defendants' motion should be affirmed in part and denied in part.

## FACTUAL BACKGROUND

On August 6, 2003, during a routine patrol, Defendant Dorn and Defendant Harris saw Plaintiff riding her bicycle in the dark without an activated bicycle light.  At the time, it was very dark and the area in question was not well lit.  Defendant Officers were driving an unmarked police car, with "no obvious markings on it distinguishing it as a government vehicle."  (Plaintiff's ("Pl.'s") Concise Statement of Material Fact ("CSMF") at 2.)  Defendant Officers pulled over next to Plaintiff and asked her where she was going.  Defendant Dorn testified that he was not sure if the interior lights in the unmarked vehicle, located "down . . . on the console," were turned on or off during the arrest.  (Pl.'s Exhibit ("Ex.") 1 at 4-5.)  He stated that he "[did not] know if they were left flicked on for a moment to identify [Defendant Officers] and flicked off."  Id. at 5.  Defendant Harris testified that he turned the lights off prior to placing Plaintiff in the vehicle.  (Pl.'s Ex. 2 at 3.)

According to Plaintiff, she asked Defendant Officers twice to identify themselves and they failed to do so.  Defendants deny this contention.  The parties agree that Plaintiff's roommate, Bill Pope, overheard the exchange.  The officers emerged from their car and approached Plaintiff.  Plaintiff ran toward her front door and attempted to enter the residence.  Before she was able to do so, Defendant Harris "reached inside, grabbed her, and forcibly

grabbed her body, including her hair, ripped her out of her home, and took her into custody." (Pl.'s CSMF at 2.) Plaintiff began screaming and "[s]everal neighbors who heard [P]laintiff's screams had gathered at the scene." (Defendants' ("Defs.'") CSMF at 2.) Plaintiff was placed in the police vehicle.

While she was in the vehicle, Plaintiff's "property was searched, allowing the officers to find identification for her and positively identify her." (Pl.'s CSMF at 3.) Defendant Officers "issued [P]laintiff a citation for riding her bicycle without a light pursuant to ORS 815.280 and . . . interfering with a police officer pursuant to ORS 162.247." (Defs.' CSMF at 2.) Plaintiff was taken to the police station. Plaintiff's shoulder bag, including her wallet and identification, and her bicycle were placed in the property room. "She was released downtown after midnight without her wallet or her bicycle." (Pl.'s CSMF at 4.)

"[P]laintiff was tried for two violation charges: interfering with a police officer and riding a bicycle on a public roadway with no light." (Defts.' CSMF at 3.) She was acquitted on the charge of interfering with a police officer, but convicted of the bicycle light violation.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The materiality of a fact is determined by the substantive law on the issue. T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

## DISCUSSION

### I. Illegal Seizure

In this case, Plaintiff claims that she was illegally seized by Defendant Officers, in violation of the Fourth Amendment to the United States Constitution. The Fourth Amendment states, in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. However, "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." Elkins v. United States, 364 U.S. 206, 222 (1960). Accordingly, there are established exceptions to this prohibition where the nature of the search or seizure is deemed reasonable and therefore lawful. "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22 (1968). A seizure "[is] jusitifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime." Florida v. Royer, 460 U.S. 491, 498 (1983). However, "in justifying the

particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21.

For purposes of summary judgment, the court must draw all inferences in favor of the Plaintiff. The facts in this case, taken together, do not justify the intrusive nature of Defendant Officers' actions at the time of the seizure of Plaintiff. When the Defendant Officers initially saw Plaintiff riding her bicycle without a light, as required by law, they reasonably approached her for purposes of investigation. At this point, however, the officers departed from a course of behavior that permitted them to reasonably detain Plaintiff. First, they pulled up to Plaintiff in an unmarked car, failed to identify themselves as police officers, ignored Plaintiff's requests that they identify themselves, did not use the car lights in a manner that would suggest they were police officers, or otherwise attempt to communicate their purpose in approaching Plaintiff. Under these facts, Plaintiff was reasonably unsure and fearful of their intentions. Defendant Officers did not act reasonably when they chased a frightened woman into her yard and pulled her out of her house by her arm and her hair. Therefore, a reasonable jury could find for Plaintiff and Defendants' motion for summary judgment on the claim of illegal seizure should be denied.

**II.     Unlawful Arrest**

"Under the Fourth Amendment, a warrantless arrest requires probable cause." U.S. v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007). "Whether [an] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."

Beck v. Ohio, 379 U.S. 89, 91 (U.S. 1964). It is an objective standard and "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (U.S. 1989).

Defendants claim that Plaintiff's behavior gave them probable cause to arrest her without a warrant for the misdemeanor of interfering with a police officer. A person has interfered with a police officer when "the person, knowing that another person is a peace officer or a parole and probation officer . . . [r]efuses to obey a lawful order by the peace officer or parole and probation officer." ORS 162.247(1)(b). On these facts, the dispute turns on whether the officers reasonably believed that Plaintiff knew they were police officers. A reasonable jury could find for Plaintiff and Defendants' motion for summary judgment on this claim should be denied.

### **III.**     **Malicious Prosecution**

The Ninth Circuit recognizes a federal malicious prosecution claim arising under 42 U.S.C. § 1983. "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)). A malicious prosecution claim may arise from a violation of the Fourth Amendment. See Awabdy, 368 F.3d at 1069 ("We have held, post-Albright, that a § 1983 malicious prosecution plaintiff must prove that the defendants acted for the purpose of depriving him of a specific constitutional right, but have not limited that right to one protected by the Fourth Amendment." (internal quotations marks and citation omitted)). Generally, police officers "are not

liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted." Blankenhorn v. City of Orange, 485 F.3d 463, 482 (9th Cir. 2007) (quoting Smiddy v. Varney, 665 F.2d 261, 267 (9th Cir. 1981)). But, "[t]his presumption may be rebutted by showing, for example, that the prosecutor was pressured or caused by the investigating officers to act contrary to his independent judgment or that the investigating officers presented the prosecution with information known by them to be false." Id. (internal quotation marks omitted). To survive summary judgment, a rebuttal must consist of more than "conclusory allegations" by the plaintiff. Sloman v. Tadlock, 21 F.3d 1462, 1474 (9th Cir. 1994). For example, the Ninth Circuit held that where the prosecutor relied solely on the police reports and the reports themselves contained "striking omissions," and "conflicting accounts of the incident," the jury could reasonably conclude that the officers "procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney." Borunda v. Richmond, 885 F.2d 1384, 1390 (9th Cir. 1988). Similarly, where the prosecutor had only the police report from which to make the charging decision, the police omitted crucial information, and an independent witness provided corroboration for the plaintiff's account, there was sufficient evidence to overcome the presumption of prosecutorial immunity. Barlow v. Ground, 943 F.2d 1132, 1137 (9th Cir. 1991).

In this case, resolving all doubts against Defendants and drawing all inferences in favor of Plaintiff, a reasonable jury could find that Plaintiff was maliciously prosecuted. First, the presumption of prosecutorial independence is subject to rebuttal in this case because the district attorney made the charging decision based solely on the evidence in the police reports. (Aff. of David Eder at 2.) Plaintiff contends that the police reports contain "misrepresentations of fact and

material omission[s]." (Pl.'s Memo in Opp. at 11.) Both police reports, authored by Defendant Dorn and Defendant Harris are essentially the same. (Pl.'s Ex. 3 at 7-14). Defendant Dorn incorporates Defendant Harris's report "for details of the initial stop." Id. at 8. Defendant Harris writes that he activated the overhead lights into "the first position" when he pulled up next to Plaintiff. Id. at 11. He also states that they identified themselves as police relatively early in the encounter, as well as indicating that Plaintiff was "under arrest" as the encounter turned into a chase. Id. at 11, 13. Both Defendant Officers omitted the fact that they used a hair hold on Plaintiff.

Overall, Defendant Officers' characterization of the events leading up to Plaintiff's arrest differ from Plaintiff's characterization. While the basic factual outline is the same, the points of divergence are important, particularly, whether Defendant Officers identified themselves as police. Further, Plaintiff asserts that she has "independent witnesses that support her version of the facts and contradict those of the officers." (Pl.'s Memo in Opposition at 12.) Alleged misrepresentations and omissions from the police report, coupled with independent witness corroboration presents sufficient evidence to survive summary judgment and Defendants' motion on Plaintiff's claim of federal malicious prosecution should be denied.

Malicious prosecution under Oregon law "consists [of] initiating or procuring criminal proceedings, from an improper motive and without probable cause, against another who is not guilty of the offense charged, and who ultimately gains a favorable termination of the proceedings." Rogers v. Hill, 281 Or. 491, 497, 576 P.2d 328 (1978). Here, criminal charges arose directly from Defendant Officers' reports and Plaintiff was found not guilty of interfering with police, thus gaining "favorable termination of the proceedings." Therefore, the only remaining question is whether Defendant Officers acted with probable cause. "[T]he existence of probable cause is a complete

defense to a claim of malicious prosecution." Hartley v. State of Oregon, 77 Or. App. 517, 520, 713 P.2d 1060 (1985). As explained above, whether Defendant Officers had probable cause to arrest Plaintiff is, in this case, a jury question. Therefore, Plaintiff's state malicious prosecution claim should survive summary judgment.

## IV.     Intentional Infliction of Emotional Distress

A claim for IIED is made up of three elements: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." Sheets v. Knight, 308 Or. 220, 236, 779 P.2d 1000 (1989). Conduct giving rise to the "extraordinary transgression" must be more than merely "rude, boorish, tyrannical, churlish and mean." Patton v. J.C. Penney Co., 301 Or. 117, 124, 719 P.2d 854 (1986), abrogated on other grounds by McGanty v. Staudenraus, 321 Or 532, 901 P.2d 841. Rather, the "distress must be so severe that no reasonable person could be expected to endure it." Checkley v. Boyd, 198 Or. App. 110, 131, 107 P.3d 651 (2005) (citing RESTATEMENT (SECOND) OF TORTS, § 46 cmt. i (1965)). Put another way, the conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Christofferson v. Church of Scientology, 57 Or. App. 203, 211 n.7, 644 P.2d 577 (1982), rev. den. 293 Ore. 456,(1982), cert. den. 459 U.S. 1206 (1983) (citing Restatement (Second) of Torts, § 46, comment d (1965)). Here, Defendant Officers' conduct, even viewed in the light most favorable to Plaintiff, simply does not constitute a transgression sufficiently extraordinary to meet the requirements for an IIED claim. Defendants motion for summary judgment on this claim should be granted.

## V.     **Punitive Damages under § 1983**

"Punitive damages are proper under section 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Ward v. City of San Jose, 967 F.2d 280, 286 (1992) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).  Generally, "[t]he decision to impose such sanctions is within the exclusive province of the jury." Kennedy v. Los Angeles Police Department, 901 F.2d 702, 707 (9th Cir. 1989).  Here, Defendants argue that Plaintiff is not entitled to punitive damages as a matter of law and, therefore, Plaintiff's punitive damages claim should not be presented to a jury.  Defendants rely on the proposition that where "the evidence and its inferences, considered as a whole and viewed in the light most favorable to [the plaintiff], can reasonably support a defense verdict only," the defendant is entitled to a directed verdict on that issue.  Ward, 967 F.2d at 286.

This argument fails for two reasons.  First, under the facts in Ward, the Ninth Circuit concluded that "[t]here [was] absolutely no evidence . . . that the officers acted with evil intent." Here, unlike the situation in Ward, a jury could reasonably infer that Defendants acted with malice or evil intent.  Second, a directed verdict is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. Pro. 50(a).  For summary judgment purposes, a directed verdict is not appropriate.

## **CONCLUSION**

For the reasons stated, Defendants' motions for summary judgment on the IIED claim should be GRANTED.  Defendants' motions for summary judgment for illegal detention, unlawful arrest, and malicious prosecution (federal and state) should be DENIED.  Defendants' request to disallow

punitive damages should be DENIED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than February 21, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 7th day of February, 2008.

          /s/ Donald C. Ashmanskas
      DONALD C. ASHMANSKAS
      United States Magistrate Judge